J. A32041/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HART TRUCKING REPAIR, HAKAN RODOP, INDIVIDUALLY AND TRADING AS HART TRUCKING REPAIR AND RODOP TRUCKING, INC. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | No. 1051 EDA 2014 |
| ROBB H, INC., WILLIAM HAWTHORNE, PAWEL WOJDALSKI AND PW CUSTOM CONSTRUCTION | : : : : | |
| APPEAL OF:  ROBB H, INC. AND WILLIAM HAWTHORNE | : : : : | |
| EAGLE TRUCK SERVICES, LLC AND FILBERTO CALZADILLO AND AIDA ROSALES, H/W | : : : : | |
| v. | : : | |
| PAWEL WOJDALSKI AND ROBB H, INC. | : : | |
| APPEAL OF:  ROBB H. INC. | : | |

Appeal from the Judgment March 7, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: February Term, 2010 No. 00546
November Term 2010 No. 00213

BEFORE: PANELLA, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 11, 2015**

---

[*] Former Justice specially assigned to the Superior Court.

Appellants,[1] Robb H., Inc., and William Hawthorne,[2] appeal from the judgment entered in favor of Appellees, Hart Trucking Repair, Hakan Rodop, individually and trading as Hart Trucking Repair and Rodop Trucking, Inc. (collectively "Hart"), Eagle Truck Services, LLC, and Filberto Calzadillo, and Aida Rosales, husband and wife (collectively "Eagle"). Appellants contend the court erred by finding Appellants could be held liable for the actions taken by an independent contractor absent evidence they had knowledge of the contractor's prior negligence. We vacate the judgment, reverse the order denying Appellants' motion for a new trial, and remand for a new trial.

We state the facts as set forth by a prior panel of this Court:

> On 30 October 2008, Wojdalski entered into a contract to perform roofing work on "Building # 7," located at 2900 Orthodox Street, Philadelphia, Pennsylvania. Pursuant to the "Roof Replacement" contract, Wo[jd]alski agreed to "remove all existing roofing materials where necessary," and "install a new rubber roof." Wojdalski immediately began work on the roof.
>
> [Around 2:00 or 2:30 a.m. on] 2 November 2008, a fire broke out at 2900 Orthodox Street. Building # 7 was entirely destroyed by the fire. The local Fire Marshall filed a "Report of Fire Alarm" which concluded that the fire had been ignited by an "Open Flame (Roofer's Torch)." In a recorded statement made to a claims underwriter, Wojdalski admitted that he had just finished installation of "a whole new . . . torch down rubber roof," which required

---

[1] For ease of disposition, we may refer to an individual appellant by using the collective "Appellants."

[2] Pawel Wojdalski and PW Custom Construction are not parties to this appeal.

the "use of [a] torch to install the roof caulking, the roof cement, and the roof tape."

**Certain Interested Underwriters at Lloyd's London Subscribing to Certificate Numbers 0637X/ATR049 v. Wojdalski**, 1296 EDA 2011 (Pa. Super. Sept. 17, 2012) ("**Wojdalski I**") (unpublished memorandum at 7) (quoting trial court's opinion);[3] **see also** N.T. Trial, 10/31/13, at 29, 184.

> The fire started on the roof of Building 7, then extended and spread to an adjacent garage/warehouse at Building 17. Both buildings and all contents were destroyed.
>
> The eight acre industrial park owned by Robb H., Inc. contains twelve commercial buildings and offices. The tenants of Building 7 and Building 17 initiated this civil litigation to recover damages for their property losses.

Trial Ct. Op., 12/19/13, at 1.

We adopt the findings of fact set forth in the instant trial court's decision. **Id.** at 1-6. We add that Wojdalski knew that "one of the most important rules" of installing a torch down rubber roof was to remain on the roof for an hour after installation to ensure everything was "safe." N.T. Wojdalski Dep., 9/27/10, at 103-05.[4] Further, he was trained to remove empty propane tanks from the roof at the end of the day. **Id.** at 105. Wojdalski testified he left the roof around 6:30 p.m. on November 1, 2008,

---

[3] The prior panel resolved an insurance coverage dispute between the insurer of Mr. Wojdalski and the insurer of the building owned by Appellant Robb H.

[4] Wojdalski did not testify at trial; his deposition was made part of the record.

drove his workers home, and then returned home. *Id.* at 53, 64. Wojdalski knew he was not supposed to leave propane tanks on the roof but did anyway because he believed they were empty. *Id.* at 177-79.

We also note that Wojdalski prepared the contract, N.T., 10/31/13, at 180, which stated a rubber roof was to be installed. Ex. RH-4. The contract did not specify "torch down" or otherwise indicate the use of an open flame. *See id.* Hawthorne testified he did not instruct Wojdalski, and was unaware "of any special precautions that needed to be taken" with respect to the roof, the "torch down" process, and roofing operations generally. N.T. at 180-81. Wojdalski similarly testified Appellants did not instruct him on how to replace the roof. N.T. Wojdalski Dep., 9/27/10, at 135; *see also id.* at 170-71.

The trial court did not adopt facts establishing that the roof repair work was "highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment." Restatement (Second) of Torts § 411 cmt. c (1965). At trial, there was no testimony or evidence on whether roof repair work is highly dangerous. Similarly, the record is silent as to whether Appellants had prior knowledge of Wojdalski's past inattentiveness, negligence, inexperience, or lack of skill.

Eagle sued only Wojdalski and Robb H., Inc., raising, *inter alia*, claims of negligence[5] *per se*, negligent supervision,[6] negligence, and "*respondeat superior*," which it framed as follows:

> 98. The negligence and carelessness of [Wojdalski and Robb H., Inc.] consist of the following:
>
> a. Failing to properly and adequately **hire**, instruct, inform, employ, train and/or supervise its agents, servants, workers, employees and/or representatives, in particular, the agents and employees of Defendant Wojdalski . . . .

Eagle's Compl. at 13 (emphasis added).[7]

---

[5] "[A] claim of corporate negligence requires that in cases where a corporation's negligence is not obvious, a plaintiff must establish through expert testimony that a corporation's acts deviated from an accepted standard of care and that the deviation was a substantial factor in causing plaintiff's harm." **Phillips v. Lock**, 86 A.3d 906, 923 (Pa. Super. 2014) (punctuation and citation omitted).

[6] We note Eagle raised this claim against Wojdalski only, but we presume that was a typographical error, as the tenor of the claim was directed to Robb H.'s alleged inaction. Eagle's Compl., 3/23/10, at 10-11.

[7] "Under the doctrine of *respondeat superior* recovery is sought on the basis of vicarious liability. An employer is vicariously liable for the wrongful acts of an **employee** if that act was committed during the course of and within the scope of employment." **Brezenski v. World Truck Transfer, Inc.**, 755 A.2d 36, 39 (Pa. Super. 2000) (emphasis added). In this case, notwithstanding Eagle's label of this claim as one for *respondeat superior*, Appellees have construed this claim as one for negligent hiring of an independent contractor under Restatement (Second) of Torts § 411. **See** Appellees' Brief at 24; **see also Lutz v. Cybularz**, 607 A.2d 1089, 1092 (Pa. Super. 1992) (construing similar allegation of negligence "as a claim arising under § 411 of the Restatement of Torts" "[a]lthough neither the parties nor the trial court phrase it as such"); **cf. Stackhouse v. Commonwealth**, 832 A.2d 1004, 1008-09 (Pa. 2003) (holding substance of complaint supersedes form for determining jurisdictional issues).

Hart sued Wojdalski, PW Custom Construction, Robb H., Inc., and William Hawthorne. Hart's Compl., 2/28/11, at 1. Hart alleged Appellants were negligent for, *inter alia*, "failing to properly hire, train, monitor and supervise their agents, employees, servants, workmen and/or contractors" or by vicarious liability. **Id.** at 11. The trial court subsequently consolidated both suits. Order, 1/13/11.

After a bench trial, the court rendered its decision on December 19, 2013, which found in favor of Appellees for all claims. Appellants timely filed, and the court denied, a post-trial motion requesting a new trial. Following entry of judgment, Appellants timely appealed. The court did not order Appellants to comply with Pa.R.A.P. 1925(b), but filed a Pa.R.A.P. 1925(a) decision.

Appellants raise the following issues:

> Did the lower court improperly impose *vicarious liability* upon [Appellant Robb H.] for the actions of its independent contractor under a theory of "negligent hiring" in the absence of proof of [Robb H.'s] own *direct negligence* in the form of notice to [Robb H.] that its independent contractor had committed prior acts of negligence as required under Pennsylvania law?
>
> Did the lower court improperly *assume* that the independent roofing contractor [*i.e.*, Pawel Wojdalski,] hired by Lessee [sic] was both unqualified and committed negligence which resulted in a fire in the absence of competent, admissible evidence of specific acts of negligence in violation of that contractor's duty to comply with an applicable standard [of] reasonable care which caused that fire?

> Did the lower court improperly find that [Appellants] could be held *vicariously liable* for the actions of an independent contractor in the absence of proof that the contractor's roof repair work itself created a "peculiar risk of harm," rather than the method by which it was performed, as required by Pennsylvania law?
>
> Did the lower court improperly decline to enforce the exculpatory terms of the commercial lease agreements between the parties which released [Appellant Robb H.] for damage to [Appellees'] property for any reason, and transferred the risk of such loss to [Appellees] and their own insurance, in accordance with controlling legal precedent determined by the Supreme Court of Pennsylvania, based upon a misinterpretation of "ambiguity" within those Lease Agreements?

Appellants' Brief at 4-5 (reordered to facilitate disposition).

We summarize Appellants' arguments for their first two issues. Appellants argue no evidence exists supporting the trial court's legal holding that they are liable for the actions of Wojdalski, an independent contractor. They assert Appellees failed to identify any evidence that Hawthorne knew or should have known that Wojdalski was not qualified to install a torch down rubber roof. *Id.* at 51-52. Appellants insist that Appellees failed to present any evidence that they knew or should have known Wojdalski had a history of incompetent or careless conduct. *Id.* at 52.

Appellees do not dispute the court's determination that Wojdalski was an independent contractor of Appellants. *See* Appellees' Brief at 31. Appellees, however, counter that the facts established Appellants awarded the roof repair job to Wojdalski because his bid was the lowest and he received a four out of five star rating on a contractor review website. *Id.* at

25. Appellees acknowledge that Appellants confirmed Wojdalski was insured and did not ask about Wojdalski's prior roofing experience, as Appellants were satisfied with his two prior roof patching jobs. *Id.* at 26. Appellees note Appellants' testimony that they knew roofing is a specialty trade, had no experience hiring roofers or repairing roofs, and did not check Wojdalski's employment references or prior work. *Id.* at 27-28. On those bases, Appellees conclude the trial court correctly held Appellants negligently hired Wojdalski. We hold Appellants are due relief.

With respect to an order resolving a motion for a new trial, the standard of review is abuse of discretion. *Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000). The analysis has two stages.

> First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Id.* (citations omitted). If the alleged mistake involved a discretionary matter, then our standard of review is abuse of discretion; if the alleged mistake involved an error of law, then our standard of review is *de novo*. *Id.* at 1123 (citations omitted).

As a prefatory matter, a Section 411 claim requires proof of the employer's personal negligence and does not rest upon any theory of vicarious liability:

> The rules stated in . . . §§ 416-429, unlike those stated in . . . §§ 410-415, do not rest upon any personal negligence of the employer. They are rules of **vicarious liability**, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault. They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. The liability imposed is closely analogous to that of a master for the negligence of his servant.

Restatement (Second) of Torts ch. 15, topic 2, intro. note. (1965) (emphasis added). In contrast, claims under Sections 416 to 429 rely on vicarious liability to hold the employer liable regardless of the employer's negligence. *Id.*

Section 411 of the Restatement (Second) of Torts states as follows:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411 (1965).[8]

We discuss the main clause first:

> *a. Meaning of "competent and careful contractor."* The words "competent and careful contractor" denote a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary.
>
> \*　　\*　　\*
>
> *b. Extent of rule.* The employer of a negligently selected contractor is subject to liability under the rule stated in this Section for physical harm caused by his failure to exercise reasonable care to select a competent and careful contractor, but only for such physical harm as is so caused. In order that the employer may be subject to liability it is, therefore, necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him. Thus, if the incompetence of the contractor consists in his lack of skill and experience or of adequate equipment but not in any previous lack of attention or diligence in applying such experience and skill or using such equipment as he possesses, the employer is subject to liability for any harm caused by the contractor's lack of skill, experience, or equipment, but not for any harm caused solely by the contractor's inattention or negligence.
>
> **Illustrations:**
>
> 3.　The omnibus with which A, the owner of a hotel, conveys his guests from the railway station to the hotel is damaged in a collision.　A contracts with B, the owner of a

---

[8] "There is little case law on point in this jurisdiction, so we must look to the Restatement as well as the law of other jurisdictions." ***Lutz v. Cybularz***, 607 A.2d 1089, 1092 (Pa. Super. 1992) (referencing Section 411).

garage, to carry A's guests in B's bus. A knows that C, the only driver who is available for this service, has only driven a car for a few days. While driving some of A's guests from the station, C mistakes the accelerator for the brake, which causes a collision between the bus and an automobile in which D is driving. A is subject to liability to D and to his guests in the bus for any harm caused by the unskillfulness of C.

4. The same facts, as in Illustration 3 except that the collision results solely from the fact that C, instead of looking where he is going, is talking to one of the passengers while approaching a street intersection. A is not liable to D unless he knew or should have known that C was careless and inattentive.

Restatement (Second) of Torts § 411 cmt. a & b, illus. 3 & 4. (1965).

Comment b and the supporting illustrations underscore two interrelated factors. First, knowledge of the particular condition or trait that caused the injury, *i.e.*, was the injury caused by (1) a lack of skill, experience, or equipment, or (2) inattention or negligence.[9] **Id.** Second, whether the employer had prior knowledge of the independent contractor's condition or trait that caused the injury, *i.e.*, the independent contractor's (1) lack of skill, experience, or equipment, or (2) inattention or negligence. **Id.** The employer's liability rests on proving both factors, otherwise the employer is immune from liability for a claim of negligent selection of an

---

[9] **Cf. Kituskie v. Corbman**, 714 A.2d 1027, 1030 (Pa. 1998) (noting claim of legal malpractice "requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case').").

independent contractor. *Id.* Stated differently, if the harm was caused by the contractor's lack of skill, experience, or equipment, then the employer is liable only if it knew or should have known the contractor was unskilled, inexperienced, or lacked equipment. *Id.* If the harm, however, was caused by the contractor's inattention or negligence, then the employer is liable only if it knew or should have known of the contractor's inattentiveness or carelessness. *Id.*

Instantly, Wojdalski acknowledged that remaining on the roof for an hour after installing a torch down rubber roof was necessary to ensure safety. N.T. Wojdalski Dep. at 103-05. Removing empty propane tanks from the roof at the end of each day was also important. *Id.* at 105. Wojdalski, however, disregarded his training, left empty propane tanks on the roof, and departed at 6:30 p.m., without waiting an hour. *Id.* at 53, 64, 103-05, 177-79. Fire broke out around 2:00 or 2:30 a.m. N.T. Trial, 10/31/13, at 29, 184. The court held Wojdalski was negligent, and Wojdalski has not appealed that determination.[10] Conversely, Wojdalski's lack of skill, experience, or equipment did not cause Appellees' injuries. *See* Restatement (Second) of Torts § 411 cmt. b. (1965). As noted above, the

---

[10] We opine that even if Wojdalski was not negligent by not staying on the roof until 7:30 p.m.—the fire started around 2:00 a.m.—he arguably acted inappropriately by leaving propane tanks on the roof.

record is silent as to whether Appellants knew or should have known of Wojdalski's inattentiveness or carelessness.

We need not address whether Appellants exercised reasonable care in selecting Wojdalski, as Appellants' harm was not caused "from some quality in the contractor which made it negligent for the employer to entrust the work to him," **see** Restatement (Second) of Torts § 411 cmt. b. (1965), but from Wojdalski's failure to adhere to his training. **See, e.g.**, N.T. Wojdalski Dep. at 103-05. To paraphrase comment b, "[Appellants are] subject to liability for any harm caused by [Wojdalski's] lack of skill, experience, or equipment, but **not** for any harm caused solely by [Wojdalski's] **negligence**." **See id.** (emphases added). The trial court held Wojdalski was negligent. Thus, because Appellees did not meet their burden of establishing their Section 411 negligent hiring claim, the trial court erroneously held as a matter of law that Appellants were negligent and thus abused its discretion by denying Appellants' motion for a new trial.[11] **See Harman**, 756 A.2d at 1122. Accordingly, we vacate the judgment, reverse the order denying Appellants' motion for a new trial, and remand for further proceedings.

Order denying post-trial motion reversed. Judgment vacated. Case remanded. Jurisdiction relinquished.

---

[11] Because we have granted relief on Appellants' first two issues, we need not rule on their remaining issues. **See Siegal v. Stefanyszyn**, 718 A.2d 1274, 1277 n.6 (Pa. Super. 1998).

J. A32041/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2015

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

### CIVIL TRIAL DIVISION

| | |
|---|---|
| EAGLE TRUCK SERVICES, LLC and<br>FILBERTO CALZADILLO and<br>AIDA ROSALES, h/w<br>      **Plaintiffs**<br><br>      vs.<br><br>PAWEL WOJDALSKI and<br>ROBB H., INC.,<br>      **Defendants** | FEBRUARY TERM, 2010<br><br>NO. 00546 |
| HART TRUCKING REPAIR, HAKAN<br>RODOP, individually and trading as<br>HART TRUCKING REPAIR and<br>RODOP TRUCKING, INC.<br>      **Plaintiffs**<br><br>      vs.<br><br>ROBB H., INC., WILLIAM HAWTHORNE,<br>PAWEL WOJDALSKI, and PW CUSTOM<br>CONSTRUCTION<br>      **Defendants** | NOVEMBER TERM, 2010<br><br>NO. 00213 |
| Re:<br>   **William Hawthorne**<br>   **Robb H., Inc.**<br>      **APPELLANTS** | SUPERIOR COURT<br><br>1051 EDA 2014 |

## OPINION TO THE HONORABLE
## SUPERIOR COURT

**MASSIAH-JACKSON, J.**

D

Date: April 22, 2014

On November 2, 2008, two garages and warehouses owned by Robb H., Inc. burned to the ground. The President of Robb H., Inc. is Mr. William Hawthorne, a long-time demolition contractor and executive. Following a non-jury trial, held on October 31, 2013, Robb H., Inc. and Mr. Hawthorne were found causally liable to their commercial tenants.

On January 14, 2014, Hart Trucking Repair, Hakan Rodop, Individually and Trading as Hart Trucking Repair, and Rodop Trucking, Inc. were awarded $86,005.00. On January 14, 2014, Eagle Truck Services, LLC, Filberto Calzadillo and Aida Rosales (husband and wife) were awarded $115,520.00

Post-Trial Motions were denied on March 7, 2014. See, Court Exhibits "A" and "B", attached hereto. This appeal was timely filed by Robb H., Inc. and Mr. Hawthorne. Both cases have been consolidated at 1051 EDA 2014.

In accordance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, this Court respectfully submits to the Honorable Superior Court, the **Memorandum in Support of Final Judgment Order in Favor of All Plaintiffs**, dated March 7, 2014, (Hart Trucking Repair/November Term, 2010, No. 00213), attached hereto as Court Exhibit "C", and, the **Memorandum in Support of Final Judgment Order in Favor of All Plaintiffs**, dated March 7, 2014, (Eagle Truck Services, LLC/February Term, 2010, No. 00546) attached hereto as Court Exhibit "D", as the reasons for the rulings.

**BY THE COURT:**

Date _April 22, 2014_

_Massiah-Jackson_

**FREDERICA A. MASSIAH-JACKSON, J.**

Control No. 13123469

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| HART TRUCKING REPAIR, HAKAN RODOP, individually and trading as HART TRUCKING REPAIR and RODOP TRUCKING, INC. <br> **Plaintiffs** | : <br> : <br> : <br> : <br> : | NOVEMBER TERM, 2010 <br><br> NO. 00213 |
| vs. | : <br> : | **DOCKETED** |
| ROBB H., INC., WILLIAM HAWTHORNE, PAWEL WOJDALSKI, and PW CUSTOM CONSTRUCTION <br> **Defendants** | : <br> : <br> : <br> : | MAR 0 7 2014 <br> F. CLARK <br> DAY FORWARD |

FINAL JUDGMENT ORDER

AND NOW, this 7th day of March, 2014, after consideration of the Motions for Post Trial Relief, and Responses thereto, and for the reasons set forth in the Memorandum filed this date, it is hereby **ORDERED** that all of the Post Trial Motions are **DENIED**, and, Judgment is entered in favor of Plaintiffs Hart Trucking Repair, Hakan Rodop, Individually and Trading as Hart Trucking Repair, and Rodop Trucking, Inc. in the amount of **Eighty Six Thousand Five Dollars ($86,005.00)** and against all Defendants Robb H., Inc., William Hawthorne, Pawel Wojdalski, and PW Custom Construction.

BY THE COURT:

FREDERICA A. MASSIAH-JACKSON, J.

Court Exhibit "A"

Control No. 13__3469

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## CIVIL TRIAL DIVISION

| | |
|---|---|
| EAGLE TRUCK SERVICES, LLC and FILBERTO CALZADILLO and AIDA ROSALES, h/w **Plaintiffs** | : : : FEBRUARY TERM, 2010 : : NO. 00546 **DOCKETED** |
| vs. | : : **MAR 0 7 2014** |
| PAWEL WOJDALSKI and ROBB H., INC., **Defendants** | : : **F. CLARK** : **DAY FORWARD** |

## FINAL JUDGMENT ORDER

**AND NOW**, this 7ᵗʰ day of March, 2014, after consideration of the Motions for Post Trial Relief, and Responses thereto, and for the reasons set forth in the Memorandum filed this date, it is hereby **ORDERED** that all of the Post Trial Motions are **DENIED**, and, Judgment is entered in favor of Plaintiffs Eagle Truck Services, LLC, Filiberto Calzadillo, and Aida Rosales (husband and wife), in the amount of **One Hundred Fifteen Thousand Five Hundred Twenty Dollars ($115,520.00)** and against all Defendants Pawel Wojdalski and Robb H., Inc.

BY THE COURT:

_____
FREDERICA A. MASSIAH-JACKSON, J.

Court Exhibit "B"

Control No. 13123469

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## CIVIL TRIAL DIVISION

| | |
|---|---|
| HART TRUCKING REPAIR, HAKAN RODOP, individually and trading as HART TRUCKING REPAIR and RODOP TRUCKING, INC. <br>      **Plaintiffs** <br><br> vs. <br><br> ROBB H., INC., WILLIAM HAWTHORNE, PAWEL WOJDALSKI, and PW CUSTOM CONSTRUCTION <br>      **Defendants** | NOVEMBER TERM, 2010 <br><br> NO. 00213    **DOCKETED** <br><br> MAR 0 7 2014 <br> F. CLARK <br> DAY FORWARD |

## MEMORANDUM IN SUPPORT OF FINAL JUDGMENT
## ORDER IN FAVOR OF ALL PLAINTIFFS

**MASSIAH-JACKSON, J.**

March 7, 2014

Court Exhibit "C"

## A. Introduction

Following a non-jury trial in October, 2013, this Court submitted Findings of Fact and Conclusions of Law in Support of All Plaintiffs, dated December 19, 2013. On January 14, 2014, an Amended Order was filed in favor of Plaintiffs, Hart Trucking Repair, Hakan Rodop, Individually and Trading as Hart Trucking Repair, and Rodop Trucking, Inc. in the amount of $86,005.00. On January 14, 2014, an Amended Order was filed in favor of Plaintiffs Eagle Truck Services, LLC, Filiberto Calzadillo, and Aida Rosales (husband and wife), in the amount of $115,520.00.

Motions for Post Trial Relief were filed by Defendants Robb H., Inc. and William Hawthorne. Post Trial Memoranda were submitted by the parties and they agreed to waive oral argument. Defendants Pawel Wojdalski and PW Custom Construction failed to appear at trial and have not participated.

After consideration of the Post Trial Memoranda, and for all of the reasons set forth in the Findings and Conclusions filed on December 19, 2013, which are incorporated herein, and attached as Court Exhibit "A", and, for the reasons set forth in this Memorandum in Support of Final Judgment Order in Favor of All Plaintiffs, filed this date, this Court concludes that all of the Defendants' Motions for Post Trial Relief are **DENIED**.

## B. Legal Discussion

William Hawthorne and Robb H., Inc., as the landlord and owner of an eight acre industrial park, accepted their contractual duty to repair the leaking roof of Building 7. Building 7 was a commercial structure rented to Plaintiffs as a two story garage/warehouse.

1

because Robb H., Inc. and William Hawthorne negligently failed to hire a competent and careful contractor, the Trial Court ruled that the breach of duties caused damages in the amount of $86,005.00 to Plaintiffs-Rodop Trucking, and, in the amount of $115,520.00 to Plaintiffs-Eagle Truck when all business and personal possessions were lost in flames.

The Defendants' trial and post-trial defense was that Pawel Wojdalski and PW Custom Construction were not negligent and did not cause the fire which ultimately destroyed Building 7 and Building 17 and all of the contents. The direct and circumstantial evidence presented at trial does not support that theory.

Generally a party is not liable for the negligent acts of its independent contractor. There are three exceptions. Relevant to this litigation is a recognized limited exception where the Defendant-Employer was negligent in selecting the contractor. See, Lutz v. Cybularz, 607 A.2d 1089 (Pa. Superior Ct. 1992); Dudash v. Palmyra Borough Authority, 483 A.2d 924 (Pa. Superior Ct. 1984). An employer of an independent contractor may be held liable for his own negligence in selecting the independent contractor. In Brletich v. United States Steel Corporation, 285 A.2d 133, 137 (Pa. 1971), our Pennsylvania Supreme Court quoted Section 411 to define a careful and competent independent contractor.

Restatement (Second) of Torts, Section 411 is further limited to claims by third persons other than employees of the negligent and negligently hired contractor. In Mentzer v. Ognibene, 597 A.2d 604 (Pa. Superior Ct. 1991), the Appellate Court stated at 608-609:

> "Section 411 by its own terms imposes liability on a property owner for negligent hiring of a contractor only to 'third persons' who are harmed as a result of such negligence. Although this phrase is not defined, the comments and illustrations to section

2

411 clearly suggest that it is intended to apply to persons who are not involved in the construction project itself and yet who are injured as a result of the negligent act of the contractor.

. . .

We agree that the scope of section 411 is properly limited to claims by third persons other than employees of the negligent independent contractor itself. This construction is not only supported by the language of section 411 and its comments and illustrations. It is also in accordance with the general principle and policy of Pennsylvania law which insulates a property owner from liability for the negligence of its independent contractor and, moreover, which places responsibility for the protection of the contractor's employees on the contractor and the employees themselves, since they, rather than the owner, are in control of the workplace, have expertise in the performance of the work, and are in the best position to afford such protection. *See Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 150-51, 189 A.2d 271, 277 (1963); *Mathis v. Lukens Steel Co.*, 415 Pa. 262, 203 A.2d 482 (1964)."

See also, Wilk v. Haus, 460 A.2d 288 (Pa. Superior Ct. 1983), where Superior Court reversed a summary judgment by relying in part on Section 411 of the Restatement. 460 A.2d at 294. Additionally, the Concurring Opinion pointed out that **Comment C** of Section 411 anticipates that the Defendant-Employer's knowledge and experience must be taken into account when considering the manner in which he selected the contractor. See, Watsontown Brick v. Hercules, 265 F.Supp.268 (E.D. Pa. 1967).

Finally, William Hawthorne and Robb H., Inc. argue that the Lease Agreements contain exculpatory clauses which provide immunity from their own negligence. This Court does not agree. The Appellate Courts routinely determine that broad statements such as, "to the fullest extent permitted by law" and "any and all claims" are not sufficiently specific to avoid liability for a Defendant's own negligence. In the absence of clear, specific and

3

express language in the Lease Agreements to support indemnification and/or rel᷄ ᷄ from liability for the landlord who was himself negligent, neither William Hawthorne nor Robb H., Inc. may sidestep liability here.

## C.    Conclusion

For all of the reasons set forth above, this Court concludes that all of the Plaintiffs met their burden of proof at trial and William Hawthorne and Robb H., Inc. negligently failed to employ a competent and careful contractor. See also, Court Exhibit "A", attached hereto and incorporated herein.

BY THE COURT:

3-7-2014

FREDERICA A. MASSIAH-JACKSON, J.

4

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## CIVIL TRIAL DIVISION

| | |
|---|---|
| HART TRUCKING REPAIR, HAKAN RODOP, individually and trading as HART TRUCKING REPAIR and RODOP TRUCKING, INC.<br>        Plaintiffs<br><br>vs.<br><br>ROBB H., INC., WILLIAM HAWTHORNE, PAWEL WOJDALSKI, and PW CUSTOM CONSTRUCTION<br>        Defendants | NOVEMBER TERM, 2010<br><br>NO. 00213 |

*DOCKETED JAN 14 2014 J. DIROSA DAY FORWARD*

## AMENDED ORDER

**AND NOW**, this 14th day of January, 2014, after conference with all counsel and for the reasons set forth in the Findings of Fact and Conclusions of Law filed December 19, 2013, it is hereby **ORDERED** that Judgment is entered in favor of Plaintiffs Hart Trucking Repair, Hakan Rodop, Individually and Trading as Hart Trucking Repair, and Rodop Trucking, Inc. in the amount of **Eighty Six Thousand Five Dollars ($86,005.00)** and against all Defendants Robb H., Inc., William Hawthorne, Pawel Wojdalski, and PW Custom Construction.

BY THE COURT:

_Frederica A. Massiah-Jackson_
FREDERICA A. MASSIAH-JACKSON, J.

Court Exhibit "A"

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CIVIL TRIAL DIVISION

| | |
|---|---|
| EAGLE TRUCK SERVICES, LLC and FILBERTO CALZADILLO and Aida ROSALES, h/w <br> **Plaintiffs** <br><br> vs. <br><br> PAWEL WOJDALSKI and ROBB H, INC., <br> **Defendants** | **FEBRUARY TERM, 2010** <br><br> NO. 00546 |
| HART TRUCKING REPAIR, HAKAN RODOP, individually and trading as HART TRUCKING REPAIR and RODOP TRUCKING, INC. <br> **Plaintiffs** <br><br> vs. <br><br> ROBB H., INC., WILLIAM HAWTHORNE, PAWEL WOJDALSKI, and PW CUSTOM CONSTRUCTION <br> **Defendants** | NOVEMBER TERM, 2010 <br><br> NO. 00213 |

**FINDINGS OF FACT and CONCLUSIONS OF LAW
in SUPPORT OF ALL PLAINTIFFS**

MASSIAH-JACKSON, J.

December 19, 2013

On the morning of November 2, 2008, a multi-alarm fire broke out at a two-story garage/warehouse at an industrial park in Northeast Philadelphia. The fire started on the roof of Building 7, then extended and spread to an adjacent garage/warehouse at Building 17. Both buildings and all contents were destroyed.

The eight acre industrial park owned by Robb H., Inc. contains twelve commercial buildings and offices. The tenants of Building 7 and Building 17 initiated this civil litigation to recover damages for their property losses.

On October 31, 2013, this Court presided over the non-jury trial in the above captioned matter. All counsel were well prepared, provided research materials to the Court, and were strong advocates for their clients. Memoranda of Law were filed on October 30, 2013 and Supplemental Memoranda of Law were filed on November 15, 2013. In accordance with Rule 1038 of the Pennsylvania Rules of Civil Procedure, this Court submits Findings of Fact and Conclusions of Law in Support of the Orders of Judgment in Favor of All Plaintiffs.

## I. FACTUAL BACKGROUND

1. Defendant Robb H., Inc. ("Robb H.") owned 2900 East Orthodox Street, Philadelphia, Pennsylvania. Defendant William Hawthorne was the President of Robb H. from 1999 through 2008. This property housed multiple commercial buildings including Building 7 and Building 17. October 31, 2013, N.T. 20-21; 166-167.

2. Robb H. is a family owned commercial real estate company. October 31, 2013, N.T. 23, 25-27, 30, 164-165.

1

3. On July 11, 2007, Robb H. and Hart Trucking Repair and Hakan Rodop, t. .ing as Rodop Trucking, Inc., (collectively "Rodop Trucking") entered into a Commercial Lease Agreement for "Building #17 and Parking Area along South Property Line as Delineated at our meeting at the Site on July 10, 2007." Rodop Trucking used the premises for Contractor's Truck Repair, Storage and Office Space. <u>Lease – Robb H. and Hart Trucking/Rodop Trucking</u>.

4. On January 2, 2008, Robb H. and Eagle Truck Services, LLC, Aida Rosales, and Filiberto Calzadilla (collectively "Eagle Truck") entered into a Commercial Lease Agreement for "Building #7 and the area immediately to the rear of said Building #7." Eagle Truck used the premises for an Auto Mechanic's Shop. <u>Lease – Robb H. and Eagle Truck</u>.

5. Clause 3 of both leases state that the Plaintiffs (Lessees) were responsible to maintain the leased property with the express exception of the roof, exterior walls, and foundation, which were to be maintained by Robb H. "Lessee shall be responsible for all repairs required, except the roof, exterior walls, and structural foundations, which shall be maintained by Lessor."

6. Each lease contains the following identical Clause 11:

> 11. **Indemnification of Lessor.** To the extent of the law, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof. Lessee agrees to indemnify and hold Lessor harmless from any claims for damages, which arise in connection with any such occurrence. Said indemnification shall include indemnity from any costs or fee, which Lessor may incur in defending said claim.

2

7. Clause 14 of both leases relates to the destruction of the premises. Clause ⨟ states, "[i]n the event that the building in which the demised premises may be situated is destroyed to the extent not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not." The lease continues, "total destruction of the building in which the premises may be situated shall terminate this lease." Lease – Both.

8. Clause 12 of the lease between Eagle Truck and Robb H. provides, "[l]essee, at his expense shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor . . . " Lease – Eagle Truck.

9. Clause 12 of the lease between Rodop Trucking and Robb H. provides, "[l]essee, at his expense, shall maintain public liability insurance including both bodily injury and property damage insuring Lessee and Lessor . . ." Lease – Robb H. and Hart Trucking/Rodop Trucking.

10. In October, 2008, Mr. Filberto Calzadillo contacted Mr. Hawthorne to inform him that the roof of Building 7 was leaking. October 31, 2013, N.T. 116.

11. Defendant-Hawthorne received bids from Valentino & Son and Pawel Wojdalski to install a flat rubber roof on Building 7. Mr. Hawthorne awarded Mr. Wojdalski the work because his bid was cheaper. October 31, 2013, N.T. 177.

12. The roofing contract identified "Bill Hawthorne" as the purchaser of services.

3

1.. William Hawthorne located Mr. Wojdalski from a website of contractor lis____gs and reviews. Mr. Wojdalski was listed as a four out of five star contractor on the website. Mr. Hawthorne did not read any of the reviews. October 31, 2013, N.T. 24, 172; Hawthorne, January 10, 2013, N.T. 23.

14. Mr. Hawthorne testified that Mr. Wojdalski provided a certificate of insurance for general contracting work with no exclusions for roofing and also a brochure. October 31, 2013, N.T. 34-35, 173.

15. Mr. Hawthorne retained Mr. Wojdalski to perform two small roof patching jobs in late 2007 and April 2008. Mr. Hawthorne "didn't see any need to" ask Mr. Wojdalski about his roofing experience prior to hiring Mr. Wojdalski for the roof patching projects. Hawthorne, January 10, 2013, N.T. 33-34, *But see*, Wojdalski, September 27, 2010, N.T. 129-130.

16. Mr. Hawthorne testified that he did not inspect Mr. Wojdalski's work on the patching jobs. He was satisfied with Mr. Wojdalski's patch work because the roof stopped leaking. Hawthorne, January 10, 2013, N.T. 37, 40.

17. After Mr. Calzadillo's call, Mr. Hawthorne entered into a contract with Mr. Wojdalski for flat rubber roof installation on Building 7 in October, 2008. Defendant-Wojdalski began work on Building 7 on or about October 31, 2008 and continued rubber roof installation on November 1, 2008. October 31, 2013, N.T. 26-27, 180.

4

1. This contract encompassed putting a new roof on 8100 square feet of the entire Building 7. Mr. Hawthorne never inspected Mr. Wojdalski's work on the roof of Building 7. October 31, 2013, N.T. 181-183.

19. Mr. Wojdalski explained in his deposition that this type of rubber roofing installation required the use of propane roofing torches attached by hose to propane tanks. The defendant would roll out rubber roof material and heat it by torch to connect the edges. The installation of a rubber roof requires the use of fire extinguishers or buckets filled with water in the event of a fire. Wojdalski, September 27, 2010, N.T. 74-75, 108-111, 158-159.

20. Mr. Wojdalski was not certified as a roofer and did not attend any trade classes to learn how to install a torch roof. All of his experience came from on-the-job training. During his on-the-job training, Mr. Wojdalski was managed by a supervisor and was never the lead on any of the roofing projects. Mr. Wojdalski stated that he handled hot roof installation under the direction of a supervisor "around five" times prior to performing any roofing work for Mr. Hawthorne and Robb H. Wojdalski, September 27, 2010, N.T. 58-59, 115-116.

21. Mr. Wojdalski testified that his former supervisor taught him to stay on the roof for one hour after a rubber torch roof installation to be sure everything was "safe". The defendant could not explain what types of hazards this precaution was intended to prevent. Remaining on the roof for an hour was part of procedure and workers would clean up during

5

ti\_\_ time. They would "check everything", however, the defendant could not elab\_rate on the procedure or how the workers "checked" to determine the roof was safe. Wojdalski, September 27, 2010, N.T. 103-105.

22.    Mr. Wojdalski knew not to leave gas tanks on the roof, however, on the evening of November 1, 2008, Mr. Wojdalski left the torches and gas tanks on the roof of Building 7. Mr. Wojdalski testified that he left the gas tanks on the roof because he believed that the tanks were empty. Wojdalski, September 27, 2010, N.T. 105-106, 178-181.

23.    In the early morning hours of November 2, 2008, a fire started on the roof of Building 7. Images of the open flames and explosion were captured at about 2:30 a.m. on Robb H.'s surveillance cameras. October 31, 2013, N.T. 29, 99.

24.    The fire spread from Building 7 to Building 17. October 31, 2013, N.T. 97; Fire Marshall Report PR-9.

25.    The fire took approximately six hours to extinguish.  The Philadelphia Fire Department's Fire Marshall's formal report noted the cause of the fire as an "Open Flame (Roofer's Torch)." Fire Marshall Report PR-9.

26.    Building 7 was destroyed in the fire as was Eagle Truck's repair shop including equipment, machinery, tools, and tractor trailers.  Eagle Truck claims damages amounting to $115,520.00. October 31, 2013, N.T. 102-112, 117-135.

27.    Building 17 was destroyed in the fire as was Rodop Trucking's property including tires, equipment, and tools.  Rodop Trucking claims damages amounting to $86,005.00. October 31, 2013, N.T. 44-46, 51-60.

6

## 1. LEGAL DISCUSSION

### A. The Exculpatory Clause Does Not Relieve Robb H. or William Hawthorne from Liability.

Under Pennsylvania law, an exculpatory clause is valid if the clause satisfies three conditions. Topp Copy Products Inc. v. Singletary, 626 A.2d 98, 99 (Pa. 1993). The clause must not "contravene" public policy, the contract must be between persons and relate to their private affairs, and, the contract must not be a contract of adhesion. In Dilks v. Flohr Chevrolet, 192 A.2d 682 (Pa. 1963), the Supreme Court noted that even if an exculpatory clause of a contract is valid it will be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. See, Dilks, supra, 192 A.2d at 687, quoting numerous cases.

The Lease Agreements here appear to satisfy the three conditions: the contracts are not contracts of adhesion, the contracts define private relationships and the use of the premises between Eagle Truck, Rodop Trucking and Defendant-Robb H., and, the release does not contravene public policy. Our Appellate Courts have also held, however, that even if an exculpatory clause is determined to be valid, it will still be unenforceable unless the clause satisfies a four prong standard. Any instrument which diminishes the legal rights of another must spell out the intentions with great particularity. The Topp Copy court, supra, identified the four prongs at 626 A.2d 99: **1)** the contract language must be construed strictly, since exculpatory language is not favored by the law; **2)** the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation,

7

a. no inference from words of general import can establish the intent of the parties, 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

Clause 3 states in pertinent part:

> "Lessee shall be responsible for all repairs required, except the roof, exterior walls, and structural foundations, which shall be maintained by Lessor."

Clause 11 states in pertinent part:

> "To the extent of the law, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof."

Clause 14 states in pertinent part:

> "In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premises may be situated shall terminate this lease."

This Court concludes that the ambiguity in the Lease Agreement relating to the scope of the term "demised premises" must be construed against Defendant-Robb H. While the leased properties are identified as Building 7 and Building 17, it is unclear within the language of the lease whether the term "demised premises" was intended to include the exterior parts of the building. No clause in either lease gives the tenant any responsibility or control over the exterior walls, foundation, or roof, but rather expressly reserves

8

r. onsibility for the roof and the exterior on Robb H. The exculpatory portion of Clause 11 limits the liability of Robb H. for any negligence "occurring on the demised premises or any part thereof." Although the lease expressly states that the parties intended to relieve Robb H. from liability for the "demised premises," it is unclear whether or not the intention of the parties was to limit Robb H.'s liability for negligence of maintenance operations occurring on the roof.

This Court concludes that although this defendant has invoked protection from Clause 11, Robb H. is unable to meet its burden to establish immunity. Robb H. is not immune from liability for negligent acts occurring on or in relation to maintenance of the roof. At best, the Lease Agreements do not articulate the intention of the parties. It appears that the Lease Agreements provide for full liability and responsibility for all such negligent acts on Defendant-Lessor-Robb H. where, as here, the roof of the building remains in control of the landlord.

### B. Robb H. and William Hawthorne Negligently Failed to Hire a Competent and Careful Contractor

Restatement (Second) of Tort, Section 411 provides:

**"§411 Negligence in Selection of Contractor**

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

9

(b) to perform any duty which the employer owes to third persons".

Section 411 imposes liability on a property owner for the negligent hiring of a contractor when third persons are harmed as a result of such negligence.

In <u>Mentzer v. Ognibene</u>, 597 A.2d 604 (Pa. Superior Ct. 1991), the Superior Court noted the general principles and policy of Pennsylvania law which insulate a property owner from liability for the negligence of its independent contractor. The Appellate Court quoted <u>Marshall v. SEPTA</u>, 587 F.Supp. 258, 261-62 (E.D. Pa. 1984):

> "As a general rule, the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants. *Hader v. Coplay Cement Co.,* 410 Pa. 139, 189 A.2d 271 (1963); *Gonzalez v. U.S. Steel Corp.,* 248 Pa.Super. 95, 1007[sic], 374 A.2d 1334, 1340 (1977), *aff'd,* 484 Pa. 277, 398 A.2d 1378 (1979); *McDonough v. U.S. Steel Corp.,* 228 Pa.Super. 268, 273–74, 324 A.2d 542, 545 (1974). *See Restatement (Second) of Torts § 409.* An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises. *Hader v. Coplay Cement Co.,* 410 Pa. at 151, 189 A.2d at 277."

There are three narrow exceptions to this general rule. Our courts recognize that an owner, such as Robb H., is expected to entrust the responsibility for the work to a qualified contractor and may justifiably depend on the contractor's expertise. Exceptions to this general rule of non-liability exists in situations where the owner has retained control of the work designated to the contractor, or, the work creates a peculiar unreasonable risk of harm

10

c. special danger to others unless precautions are taken, or, the owner negligently selected a contractor. Mentzer v. Ognibene, supra, 597 A.2d at 610; Wilk v. Haus, 460 A.2d 288, 294 (Pa. Superior Ct. 1983).

In this case, there was no evidence presented that Defendant-Hawthorne or Robb H. retained control of the timing, manner of work or other supervisory function. See Restatement (Second) of Torts, §414; Beil v. Telesis Construction, Inc., 11 A.3d 456 (Pa. 2011). The Plaintiffs vigorously argued throughout the litigation that the nature of the roofing working, the use of propane torches, and risk of fire is a special danger and/or peculiar risk. Although Plaintiffs' arguments are compelling, this Court is not willing to conclude as a matter of law that the risk of the destructive fire was contemplated by Mr. Hawthorne at the time he entered into the contract with Mr. Wojdalski. Moreover, the negligent acts and omissions when the roofer performed his work was one of several causes of the destruction of the two buildings. See, Restatement (Second) of Torts, §§416 and 427; Edwards v. Franklin & Marshall College, 663 A.2d 187 (Pa. Superior Ct. 1995).

When Defendant-Hawthorne failed to exercise reasonable care to employ a competent roofer to do the work which he knew required special skill and care in the use of torches, propane tanks and safety equipment, he is liable for his failure to maintain the premises for these Plaintiff-Lessees. When the Owner/Lessor Robb H. negligently selected an incompetent roofer to perform maintenance and repairs on the roof of the leased property,

11

those actions fell within the exception to the general rule of non-liability of owners who entrust work to independent contractors. See, <u>Adler v. Sklaroff</u>, 36 A.2d 231 (Pa. Superior Ct. 1944).

Robb H. and William Hawthorne contend that there is no direct evidence of how the fire started, since no one was on the roof in the early morning hours of November 2, 2008. A trier of fact is free to consider direct and circumstantial evidence in reaching a verdict. In this case, Mr. Wojdalski testified at his deposition that when he left the work site at 6:30 p.m. on November 1st, there were three gas tanks, tools and torches which he left on the roof. N.T. 177-180. This defendant stated that he knew he should have removed the gas tanks, however, he thought they were empty. N.T. 105-106, 178-181. The video surveillance films clearly showed to Mr. Hawthorne and to others that the fire was blazing at 2:30 a.m. on November 2nd. There is sufficient circumstantial evidence to conclude that the hot roofing material and rubber installation which were left unattended the prior evening smoldered and simmered and ignited the propane gas tanks and debris causing the explosion and open flames several hours later.

Comment a of the Restatement (Second) of Torts, §411, states:

> "a. *Meaning of 'competent and careful contractor.'* The words 'competent and careful contractor' denote a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary."

12

record reveals that neither Pawel Wojdalski nor PW Custom Construction possessed the common sense, knowledge, skill, training or experience for a major roof installation of this magnitude which a reasonable owner/lessor should have realized that a contractor must have in order to do the work they were employed to do.

Defendant-Wojdalski was unable to explain why certain procedures were in place to ensure no fires and no hot spots and no smoldering of roof materials at the end of the work day. N.T. 103-105. He failed to appreciate the risks and danger associated with empty propane tanks.

Comment c of the Restatement (Second) of Torts, §411, states:

> "c. *Factors determining amount of care required.* The amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary.
>
> Certain factors are important: (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done--whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other."

The record establishes that "Bill Hawthorne" and Robb H. executed a contract for installation of a rubber roof using propane roofing torches. This type of installation required readily accessible water source. It also required that the rubber cool down to be safe. It required a period of one to two hours for workers to "watch" the site and confirm that there was no fire hazard.

13

Clearly, one who hires a contractor who is expected to handle flammable materials is required to exercise greater care in the selection of the worker. The Restatement **Comment c** provides:

> ". . . if the work is such as will be highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual competence."

Defendant-Hawthorne testified at trial that he never checked Mr. Wojdalski's employment references. N.T. 24; that he knew roofing is a specialty trade, N.T. 25; and, Mr. Wojdalski had previously worked as a painter and done two small roof repair jobs, N.T. 22-23. Mr. Hawthorne had never inspected Mr. Wojdalski's prior roof repair work, and, he himself had no experience in hiring roofers or performing roof repairs, N.T. 26-27. Each time Defendant-Wojdalski was selected by Defendant-Hawthorne to do work was because he was the cheapest contractor. N.T. 39. Mr. Hawthorne testified that he conducted no investigations with respect to Mr. Wojdalski and his qualifications. N.T. 172-73. Mr. Hawthorne did not prepare the scope of work or select the roofing materials to supervise or provide any advice about the roofing work. N.T. 180-181. Even though this type of roof involved torches, Mr. Hawthorne was not aware of any special precautions taken by the roofer. N.T. 181.

14

The Restatement guidelines at **Comment c** also indicate that "the exte. of the employer's knowledge and experience in the field of work to be done" should also be taken into account. Defendant-Hawthorne testified at trial that he knew nothing about the torch down process or hot groove application for 8100 square feet installation of the new roof. N.T. 181.

The Plaintiffs-Eagle Truck and Rodop Trucking presented substantial evidence in support of their causes of action for negligence, negligent hiring, negligent supervision and respondeat superior. William Hawthorne executed the contract in his own name. Robb H. was the owner and landlord of the buildings. Defendant-Hawthorne negligently selected the contractor and failed to select a competent contractor. These Defendants negligently employed an incompetent and careless contractor.

## C.    Damages

The testimony of Mr. Hakan Rodop was credible. The Court has reviewed and relied on the photographs and other exhibits when considering the devastation and damages to plaintiffs' property. Judgment will be awarded in the amount of **$115,520.00**.

The testimony of Mr. Filiberto Calzadillo and his wife, Mrs. Aida Rosales was credible. The Court has reviewed and relied on the photographs and other exhibits when considering the devastation and damages to plaintiffs' property. Judgment will be awarded in the amount of **$86,005.00**.

15

## I. CONCLUSION

This Court concludes that the fire which occurred on November 2, 2008, was avoidable. It was the result of carelessness and negligence of Pawel Wojdalski and PW Custom Construction when those defendants installed a torch down rubber roof. The unskilled and untrained roofer improperly applied and/or used the roofing materials and the propane torch.

This Court also concludes that William Hawthorne and Robb H., Inc. in complete disregard of the duty owed to the Plaintiffs, failed to exercise reasonable care or investigation to employ a competent contractor. The type of work, known by those defendants to be specialty work and dangerous if not properly done, required William Hawthorne and Robb H., Inc. to go further than look at a website and pick the cheapest contractor without any effort to ascertain the contractor's actual competence for this major project.

For all of the reasons set forth above in these Findings of Fact and Conclusions of Law, judgment will be entered in favor of all Plaintiffs and against all Defendants.

BY THE COURT:

_____
FREDERICA A. MASSIAH-JACKSON, J.

Dec. 19, 2013

16

Control No. 1. ,3469

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| EAGLE TRUCK SERVICES, LLC and FILBERTO CALZADILLO and AIDA ROSALES, h/w | : : : | FEBRUARY TERM, 2010 |
| **Plaintiffs** | : : | NO. 00546   **DOCKETED** |
| vs. | : : | |
| PAWEL WOJDALSKI and ROBB H., INC., | : : | MAR 0 7 2014 F. CLARK DAY FORWARD |
| **Defendants** | : | |

## MEMORANDUM IN SUPPORT OF FINAL JUDGMENT ORDER IN FAVOR OF ALL PLAINTIFFS

MASSIAH-JACKSON, J.

March 7, 2014

Court Exhibit "D"

### A. Introduction

Following a non-jury trial in October, 2013, this Court submitted Findings of Fact and Conclusions of Law in Support of All Plaintiffs, dated December 19, 2013. On January 14, 2014, an Amended Order was filed in favor of Plaintiffs, Hart Trucking Repair, Hakan Rodop, Individually and Trading as Hart Trucking Repair, and Rodop Trucking, Inc. in the amount of $86,005.00. On January 14, 2014, an Amended Order was filed in favor of Plaintiffs Eagle Truck Services, LLC, Filiberto Calzadillo, and Aida Rosales (husband and wife), in the amount of $115,520.00.

Motions for Post Trial Relief were filed by Defendants Robb H., Inc. and William Hawthorne. Post Trial Memoranda were submitted by the parties and they agreed to waive oral argument. Defendants Pawel Wojdalski and PW Custom Construction failed to appear at trial and have not participated.

After consideration of the Post Trial Memoranda, and for all of the reasons set forth in the Findings and Conclusions filed on December 19, 2013, which are incorporated herein, and attached as Court Exhibit "A", and, for the reasons set forth in this Memorandum in Support of Final Judgment Order in Favor of All Plaintiffs, filed this date, this Court concludes that all of the Defendants' Motions for Post Trial Relief are **DENIED.**

### B. Legal Discussion

William Hawthorne and Robb H., Inc., as the landlord and owner of an eight acre industrial park, accepted their contractual duty to repair the leaking roof of Building 7. Building 7 was a commercial structure rented to Plaintiffs as a two story garage/warehouse.

1

Be.   .se Robb H., Inc. and William Hawthorne negligently failed to hire a compe.   , and careful contractor, the Trial Court ruled that the breach of duties caused damages in the amount of $86,005.00 to Plaintiffs-Rodop Trucking, and, in the amount of $115,520.00 to Plaintiffs-Eagle Truck when all business and personal possessions were lost in flames.

The Defendants' trial and post-trial defense was that Pawel Wojdalski and PW Custom Construction were not negligent and did not cause the fire which ultimately destroyed Building 7 and Building 17 and all of the contents. The direct and circumstantial evidence presented at trial does not support that theory.

Generally a party is not liable for the negligent acts of its independent contractor. There are three exceptions. Relevant to this litigation is a recognized limited exception where the Defendant-Employer was negligent in selecting the contractor. See, Lutz v. Cybularz, 607 A.2d 1089 (Pa. Superior Ct. 1992); Dudash v. Palmyra Borough Authority, 483 A.2d 924 (Pa. Superior Ct. 1984). An employer of an independent contractor may be held liable for his own negligence in selecting the independent contractor. In Brletich v. United States Steel Corporation, 285 A.2d 133, 137 (Pa. 1971), our Pennsylvania Supreme Court quoted Section 411 to define a careful and competent independent contractor.

Restatement (Second) of Torts, Section 411 is further limited to claims by third persons other than employees of the negligent and negligently hired contractor. In Mentzer v. Ognibene, 597 A.2d 604 (Pa. Superior Ct. 1991), the Appellate Court stated at 608-609:

> "Section 411 by its own terms imposes liability on a property owner for negligent hiring of a contractor only to 'third persons' who are harmed as a result of such negligence. Although this phrase is not defined, the comments and illustrations to section

2

411 clearly suggest that it is intended to apply to persons who are not involved in the construction project itself and yet who are injured as a result of the negligent act of the contractor.

. . .

We agree that the scope of section 411 is properly limited to claims by third persons other than employees of the negligent independent contractor itself. This construction is not only supported by the language of section 411 and its comments and illustrations. It is also in accordance with the general principle and policy of Pennsylvania law which insulates a property owner from liability for the negligence of its independent contractor and, moreover, which places responsibility for the protection of the contractor's employees on the contractor and the employees themselves, since they, rather than the owner, are in control of the workplace, have expertise in the performance of the work, and are in the best position to afford such protection. *See Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 150-51, 189 A.2d 271, 277 (1963); *Mathis v. Lukens Steel Co.,* 415 Pa. 262, 203 A.2d 482 (1964)."

See also, Wilk v. Haus, 460 A.2d 288 (Pa. Superior Ct. 1983), where Superior Court reversed a summary judgment by relying in part on Section 411 of the Restatement. 460 A.2d at 294. Additionally, the Concurring Opinion pointed out that **Comment C** of Section 411 anticipates that the Defendant-Employer's knowledge and experience must be taken into account when considering the manner in which he selected the contractor. See, Watsontown Brick v. Hercules, 265 F.Supp.268 (E.D. Pa. 1967).

Finally, William Hawthorne and Robb H., Inc. argue that the Lease Agreements contain exculpatory clauses which provide immunity from their own negligence. This Court does not agree. The Appellate Courts routinely determine that broad statements such as, "to the fullest extent permitted by law" and "any and all claims" are not sufficiently specific to avoid liability for a Defendant's own negligence. In the absence of clear, specific and

3

exp___s language in the Lease Agreements to support indemnification and/or relea___ from liability for the landlord who was himself negligent, neither William Hawthorne nor Robb H., Inc. may sidestep liability here.

## C.   Conclusion

For all of the reasons set forth above, this Court concludes that all of the Plaintiffs met their burden of proof at trial and William Hawthorne and Robb H., Inc. negligently failed to employ a competent and careful contractor.  See also, Court Exhibit "A", attached hereto and incorporated herein.

**BY THE COURT:**

_____  3-7-2014
FREDERICA A. MASSIAH-JACKSON, J.

4

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## CIVIL TRIAL DIVISION

| | |
|---|---|
| EAGLE TRUCK SERVICES, LLC and FILBERTO CALZADILLO and AIDA ROSALES, h/w **Plaintiffs**<br><br>vs.<br><br>PAWEL WOJDALSKI and ROBB H., INC., **Defendants** | FEBRUARY TERM, 2010<br><br>NO. 00546 |

**DOCKETED JAN 14 2014 J. DIROSA DAY FORWARD**

## AMENDED ORDER

AND NOW, this 14 day of January, 2014, after conference with all counsel and for the reasons set forth in the Findings of Fact and Conclusions of Law filed December 19, 2013, it is hereby **ORDERED** that Judgment is entered in favor of Plaintiffs Eagle Truck Services, LLC, Filiberto Calzadillo, and Aida Rosales (husband and wife), in the amount of **One Hundred Fifteen Thousand Five Hundred Twenty Dollars ($115,520.00)** and against all Defendants Pawel Wojdalski and Robb H., Inc.

BY THE COURT:

FREDERICA A. MASSIAH-JACKSON, J.

Court Exhibit "A"

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CIVIL TRIAL DIVISION

| | |
|---|---|
| EAGLE TRUCK SERVICES, LLC and FILBERTO CALZADILLO and Aida ROSALES, h/w       **Plaintiffs**<br><br>vs.<br><br>PAWEL WOJDALSKI and ROBB H, INC.,       **Defendants** | FEBRUARY TERM, 2010<br><br>NO. 00546 |
| HART TRUCKING REPAIR, HAKAN RODOP, individually and trading as HART TRUCKING REPAIR and RODOP TRUCKING, INC.       **Plaintiffs**<br><br>vs.<br><br>ROBB H., INC., WILLIAM HAWTHORNE, PAWEL WOJDALSKI, and PW CUSTOM CONSTRUCTION       **Defendants** | NOVEMBER TERM, 2010<br><br>NO. 00213 |

**FINDINGS OF FACT and CONCLUSIONS OF LAW
in SUPPORT OF ALL PLAINTIFFS**

MASSIAH-JACKSON, J.

December 19, 2013

On the morning of November 2, 2008, a multi-alarm fire broke out at a t\ story garage/warehouse at an industrial park in Northeast Philadelphia. The fire started on the roof of Building 7, then extended and spread to an adjacent garage/warehouse at Building 17. Both buildings and all contents were destroyed.

The eight acre industrial park owned by Robb H., Inc. contains twelve commercial buildings and offices. The tenants of Building 7 and Building 17 initiated this civil litigation to recover damages for their property losses.

On October 31, 2013, this Court presided over the non-jury trial in the above captioned matter. All counsel were well prepared, provided research materials to the Court, and were strong advocates for their clients. Memoranda of Law were filed on October 30, 2013 and Supplemental Memoranda of Law were filed on November 15, 2013. In accordance with Rule 1038 of the Pennsylvania Rules of Civil Procedure, this Court submits Findings of Fact and Conclusions of Law in Support of the Orders of Judgment in Favor of All Plaintiffs.

## I. FACTUAL BACKGROUND

1. Defendant Robb H., Inc. ("Robb H.") owned 2900 East Orthodox Street, Philadelphia, Pennsylvania. Defendant William Hawthorne was the President of Robb H. from 1999 through 2008. This property housed multiple commercial buildings including Building 7 and Building 17. October 31, 2013, N.T. 20-21, 166-167.

2. Robb H. is a family owned commercial real estate company. October 31, 2013, N.T. 23, 25-27, 30, 164-165.

1

3.    On July 11, 2007, Robb H. and Hart Trucking Repair and Hakan Rodop, tra   .g as Rodop Trucking, Inc., (collectively "Rodop Trucking") entered into a Commercial Lease Agreement for "Building #17 and Parking Area along South Property Line as Delineated at our meeting at the Site on July 10, 2007." Rodop Trucking used the premises for Contractor's Truck Repair, Storage and Office Space. Lease – Robb H. and Hart Trucking/Rodop Trucking.

4.    On January 2, 2008, Robb H. and Eagle Truck Services, LLC, Aida Rosales, and Filiberto Calzadilla (collectively "Eagle Truck") entered into a Commercial Lease Agreement for "Building #7 and the area immediately to the rear of said Building #7." Eagle Truck used the premises for an Auto Mechanic's Shop. Lease – Robb H. and Eagle Truck.

5.    Clause 3 of both leases state that the Plaintiffs (Lessees) were responsible to maintain the leased property with the express exception of the roof, exterior walls, and foundation, which were to be maintained by Robb H. "Lessee shall be responsible for all repairs required, except the roof, exterior walls, and structural foundations, which shall be maintained by Lessor."

6.    Each lease contains the following identical Clause 11:

> 11. **Indemnification of Lessor.** To the extent of the law, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof. Lessee agrees to indemnify and hold Lessor harmless from any claims for damages, which arise in connection with any such occurrence. Said indemnification shall include indemnity from any costs or fee, which Lessor may incur in defending said claim.

2

7. Clause 14 of both leases relates to the destruction of the premises. Clause 1- ~~ates~~, "[i]n the event that the building in which the demised premises may be situated is destroyed to the extent not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not." The lease continues, "total destruction of the building in which the premises may be situated shall terminate this lease." Lease – Both.

8. Clause 12 of the lease between Eagle Truck and Robb H. provides, "[l]essee, at his expense shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor . . . " Lease – Eagle Truck.

9. Clause 12 of the lease between Rodop Trucking and Robb H. provides, "[l]essee, at his expense, shall maintain public liability insurance including both bodily injury and property damage insuring Lessee and Lessor . . ." Lease – Robb H. and Hart Trucking/Rodop Trucking.

10. In October, 2008, Mr. Filberto Calzadillo contacted Mr. Hawthorne to inform him that the roof of Building 7 was leaking. October 31, 2013, N.T. 116.

11. Defendant-Hawthorne received bids from Valentino & Son and Pawel Wojdalski to install a flat rubber roof on Building 7. Mr. Hawthorne awarded Mr. Wojdalski the work because his bid was cheaper. October 31, 2013, N.T. 177.

12. The roofing contract identified "Bill Hawthorne" as the purchaser of services.

3

13      William Hawthorne located Mr. Wojdalski from a website of contractor listing and reviews. Mr. Wojdalski was listed as a four out of five star contractor on the website. Mr. Hawthorne did not read any of the reviews. <u>October 31, 2013, N.T. 24, 172; Hawthorne, January 10, 2013, N.T. 23.</u>

14.      Mr. Hawthorne testified that Mr. Wojdalski provided a certificate of insurance for general contracting work with no exclusions for roofing and also a brochure. <u>October 31, 2013, N.T. 34-35, 173.</u>

15.      Mr. Hawthorne retained Mr. Wojdalski to perform two small roof patching jobs in late 2007 and April 2008. Mr. Hawthorne "didn't see any need to" ask Mr. Wojdalski about his roofing experience prior to hiring Mr. Wojdalski for the roof patching projects. <u>Hawthorne, January 10, 2013, N.T. 33-34,</u> *But see,* <u>Wojdalski, September 27, 2010, N.T. 129-130.</u>

16.      Mr. Hawthorne testified that he did not inspect Mr. Wojdalski's work on the patching jobs. He was satisfied with Mr. Wojdalski's patch work because the roof stopped leaking. <u>Hawthorne, January 10, 2013, N.T. 37, 40.</u>

17.      After Mr. Calzadillo's call, Mr. Hawthorne entered into a contract with Mr. Wojdalski for flat rubber roof installation on Building 7 in October, 2008. Defendant-Wojdalski began work on Building 7 on or about October 31, 2008 and continued rubber roof installation on November 1, 2008. <u>October 31, 2013, N.T. 26-27, 180.</u>

4

18. This contract encompassed putting a new roof on 8100 square feet of the entire Building 7. Mr. Hawthorne never inspected Mr. Wojdalski's work on the roof of Building 7. October 31, 2013, N.T. 181-183.

19. Mr. Wojdalski explained in his deposition that this type of rubber roofing installation required the use of propane roofing torches attached by hose to propane tanks. The defendant would roll out rubber roof material and heat it by torch to connect the edges. The installation of a rubber roof requires the use of fire extinguishers or buckets filled with water in the event of a fire. Wojdalski, September 27, 2010, N.T. 74-75, 108-111, 158-159.

20. Mr. Wojdalski was not certified as a roofer and did not attend any trade classes to learn how to install a torch roof. All of his experience came from on-the-job training. During his on-the-job training, Mr. Wojdalski was managed by a supervisor and was never the lead on any of the roofing projects. Mr. Wojdalski stated that he handled hot roof installation under the direction of a supervisor "around five" times prior to performing any roofing work for Mr. Hawthorne and Robb H. Wojdalski, September 27, 2010, N.T. 58-59, 115-116.

21. Mr. Wojdalski testified that his former supervisor taught him to stay on the roof for one hour after a rubber torch roof installation to be sure everything was "safe". The defendant could not explain what types of hazards this precaution was intended to prevent. Remaining on the roof for an hour was part of procedure and workers would clean up during

5

th me. They would "check everything", however, the defendant could not elab e on the procedure or how the workers "checked" to determine the roof was safe. Wojdalski, September 27, 2010, N.T. 103-105.

22. Mr. Wojdalski knew not to leave gas tanks on the roof, however, on the evening of November 1, 2008, Mr. Wojdalski left the torches and gas tanks on the roof of Building 7. Mr. Wojdalski testified that he left the gas tanks on the roof because he believed that the tanks were empty. Wojdalski, September 27, 2010, N.T. 105-106, 178-181.

23. In the early morning hours of November 2, 2008, a fire started on the roof of Building 7. Images of the open flames and explosion were captured at about 2:30 a.m. on Robb H.'s surveillance cameras. October 31, 2013, N.T. 29, 99.

24. The fire spread from Building 7 to Building 17. October 31, 2013, N.T. 97; Fire Marshall Report PR-9.

25. The fire took approximately six hours to extinguish. The Philadelphia Fire Department's Fire Marshall's formal report noted the cause of the fire as an "Open Flame (Roofer's Torch)." Fire Marshall Report PR-9.

26. Building 7 was destroyed in the fire as was Eagle Truck's repair shop including equipment, machinery, tools, and tractor trailers. Eagle Truck claims damages amounting to $115,520.00. October 31, 2013, N.T. 102-112, 117-135.

27. Building 17 was destroyed in the fire as was Rodop Trucking's property including tires, equipment, and tools. Rodop Trucking claims damages amounting to $86,005.00. October 31, 2013, N.T. 44-46, 51-60.

## II. EGAL DISCUSSION

### A. The Exculpatory Clause Does Not Relieve Robb H. or William Hawthorne from Liability.

---

Under Pennsylvania law, an exculpatory clause is valid if the clause satisfies three conditions. Topp Copy Products Inc. v. Singletary, 626 A.2d 98, 99 (Pa. 1993). The clause must not "contravene" public policy, the contract must be between persons and relate to their private affairs, and, the contract must not be a contract of adhesion. In Dilks v. Flohr Chevrolet, 192 A.2d 682 (Pa. 1963), the Supreme Court noted that even if an exculpatory clause of a contract is valid it will be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. See, Dilks, supra, 192 A.2d at 687, quoting numerous cases.

The Lease Agreements here appear to satisfy the three conditions: the contracts are not contracts of adhesion, the contracts define private relationships and the use of the premises between Eagle Truck, Rodop Trucking and Defendant-Robb H., and, the release does not contravene public policy. Our Appellate Courts have also held, however, that even if an exculpatory clause is determined to be valid, it will still be unenforceable unless the clause satisfies a four prong standard. Any instrument which diminishes the legal rights of another must spell out the intentions with great particularity. The Topp Copy court, supra, identified the four prongs at 626 A.2d 99: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation,

7

an ) inference from words of general import can establish the intent of the parties; , the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

Clause 3 states in pertinent part:

> "Lessee shall be responsible for all repairs required, except the roof, exterior walls, and structural foundations, which shall be maintained by Lessor."

Clause 11 states in pertinent part:

> "To the extent of the law, Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof."

Clause 14 states in pertinent part:

> "In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premises may be situated shall terminate this lease."

This Court concludes that the ambiguity in the Lease Agreement relating to the scope of the term "demised premises" must be construed against Defendant-Robb H. While the leased properties are identified as Building 7 and Building 17, it is unclear within the language of the lease whether the term "demised premises" was intended to include the exterior parts of the building. No clause in either lease gives the tenant any responsibility or control over the exterior walls, foundation, or roof, but rather expressly reserves

8

res sibility for the roof and the exterior on Robb H. The exculpatory portion of Cl e 11 limits the liability of Robb H. for any negligence "occurring on the demised premises or any part thereof." Although the lease expressly states that the parties intended to relieve Robb H. from liability for the "demised premises," it is unclear whether or not the intention of the parties was to limit Robb H.'s liability for negligence of maintenance operations occurring on the roof.

This Court concludes that although this defendant has invoked protection from Clause 11, Robb H. is unable to meet its burden to establish immunity. Robb H. is not immune from liability for negligent acts occurring on or in relation to maintenance of the roof. At best, the Lease Agreements do not articulate the intention of the parties. It appears that the Lease Agreements provide for full liability and responsibility for all such negligent acts on Defendant-Lessor-Robb H. where, as here, the roof of the building remains in control of the landlord.

**B.** **Robb H. and William Hawthorne Negligently Failed to Hire a Competent and Careful Contractor**

Restatement (Second) of Tort, Section 411 provides:

**"§411 Negligence in Selection of Contractor**

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

9

(b) to perform any duty which the employer owes to third persons".

Section 411 imposes liability on a property owner for the negligent hiring of a contractor when third persons are harmed as a result of such negligence.

In <u>Mentzer v. Ognibene</u>, 597 A.2d 604 (Pa. Superior Ct. 1991), the Superior Court noted the general principles and policy of Pennsylvania law which insulate a property owner from liability for the negligence of its independent contractor. The Appellate Court quoted <u>Marshall v. SEPTA</u>, 587 F.Supp. 258, 261-62 (E.D. Pa. 1984):

> "As a general rule, the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants. *Hader v. Coplay Cement Co.,* 410 Pa. 139, 189 A.2d 271 (1963); *Gonzalez v. U.S. Steel Corp.,* 248 Pa.Super. 95, 1007[sic], 374 A.2d 1334, 1340 (1977), *aff'd,* 484 Pa. 277, 398 A.2d 1378 (1979); *McDonough v. U.S. Steel Corp.,* 228 Pa.Super. 268, 273–74, 324 A.2d 542, 545 (1974). *See Restatement (Second) of Torts § 409.* An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises. *Hader v. Coplay Cement Co.,* 410 Pa. at 151, 189 A.2d at 277."

There are three narrow exceptions to this general rule. Our courts recognize that an owner, such as Robb H., is expected to entrust the responsibility for the work to a qualified contractor and may justifiably depend on the contractor's expertise. Exceptions to this general rule of non-liability exists in situations where the owner has retained control of the work designated to the contractor, or, the work creates a peculiar unreasonable risk of harm

10

or    cial danger to others unless precautions are taken, or, the owner negligently se    ted a contractor. <u>Mentzer v. Ognibene</u>, <u>supra</u>, 597 A.2d at 610; <u>Wilk v. Haus</u>, 460 A.2d 288, 294 (Pa. Superior Ct. 1983).

In this case, there was no evidence presented that Defendant-Hawthorne or Robb H. retained control of the timing, manner of work or other supervisory function. See Restatement (Second) of Torts, §414; <u>Beil v. Telesis Construction, Inc.</u>, 11 A.3d 456 (Pa. 2011). The Plaintiffs vigorously argued throughout the litigation that the nature of the roofing working, the use of propane torches, and risk of fire is a special danger and/or peculiar risk. Although Plaintiffs' arguments are compelling, this Court is not willing to conclude as a matter of law that the risk of the destructive fire was contemplated by Mr. Hawthorne at the time he entered into the contract with Mr. Wojdalski. Moreover, the negligent acts and omissions when the roofer performed his work was one of several causes of the destruction of the two buildings. See, Restatement (Second) of Torts, §§416 and 427; <u>Edwards v. Franklin & Marshall College</u>, 663 A.2d 187 (Pa. Superior Ct. 1995).

When Defendant-Hawthorne failed to exercise reasonable care to employ a competent roofer to do the work which he knew required special skill and care in the use of torches, propane tanks and safety equipment, he is liable for his failure to maintain the premises for these Plaintiff-Lessees. When the Owner/Lessor Robb H. negligently selected an incompetent roofer to perform maintenance and repairs on the roof of the leased property,

11

the actions fell within the exception to the general rule of non-liability of own who entrust work to independent contractors. See, <u>Adler v. Sklaroff</u>, 36 A.2d 231 (Pa. Superior Ct. 1944).

Robb H. and William Hawthorne contend that there is no direct evidence of how the fire started, since no one was on the roof in the early morning hours of November 2, 2008. A trier of fact is free to consider direct and circumstantial evidence in reaching a verdict. In this case, Mr. Wojdalski testified at his deposition that when he left the work site at 6:30 p.m. on November 1st, there were three gas tanks, tools and torches which he left on the roof. N.T. 177-180. This defendant stated that he knew he should have removed the gas tanks, however, he thought they were empty. N.T. 105-106, 178-181. The video surveillance films clearly showed to Mr. Hawthorne and to others that the fire was blazing at 2:30 a.m. on November 2nd. There is sufficient circumstantial evidence to conclude that the hot roofing material and rubber installation which were left unattended the prior evening smoldered and simmered and ignited the propane gas tanks and debris causing the explosion and open flames several hours later.

**Comment a** of the Restatement (Second) of Torts, §411, states:

> "a. *Meaning of 'competent and careful contractor.'* The words 'competent and careful contractor' denote a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, and who also possesses the personal characteristics which are equally necessary."

12.

Tl ᴣcord reveals that neither Pawel Wojdalski nor PW Custom Construction possᴄ ᴅd the common sense, knowledge, skill, training or experience for a major roof installation of this magnitude which a reasonable owner/lessor should have realized that a contractor must have in order to do the work they were employed to do.

Defendant-Wojdalski was unable to explain why certain procedures were in place to ensure no fires and no hot spots and no smoldering of roof materials at the end of the work day. N.T. 103-105. He failed to appreciate the risks and danger associated with empty propane tanks.

**Comment c** of the Restatement (Second) of Torts, §411, states:

> "*c. Factors determining amount of care required.* The amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary.
>
> Certain factors are important: (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done--whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other."

The record establishes that "Bill Hawthorne" and Robb H. executed a contract for installation of a rubber roof using propane roofing torches. This type of installation required readily accessible water source. It also required that the rubber cool down to be safe. It required a period of one to two hours for workers to "watch" the site and confirm that there was no fire hazard.

Clearly, one who hires a contractor who is expected to handle flammable materials is required to exercise greater care in the selection of the worker. The Restatement **Comment c** provides:

> ". . . if the work is such as will be highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual competence."

Defendant-Hawthorne testified at trial that he never checked Mr. Wojdalski's employment references. N.T. 24; that he knew roofing is a specialty trade, N.T. 25; and, Mr. Wojdalski had previously worked as a painter and done two small roof repair jobs, N.T. 22-23. Mr. Hawthorne had never inspected Mr. Wojdalski's prior roof repair work, and, he himself had no experience in hiring roofers or performing roof repairs, N.T. 26-27. Each time Defendant-Wojdalski was selected by Defendant-Hawthorne to do work was because he was the cheapest contractor. N.T. 39. Mr. Hawthorne testified that he conducted no investigations with respect to Mr. Wojdalski and his qualifications. N.T. 172-73. Mr. Hawthorne did not prepare the scope of work or select the roofing materials to supervise or provide any advice about the roofing work. N.T. 180-181. Even though this type of roof involved torches, Mr. Hawthorne was not aware of any special precautions taken by the roofer. N.T. 181.

14

The Restatement guidelines at **Comment c** also indicate that "the extent ﹖ the employer's knowledge and experience in the field of work to be done" should also be taken into account. Defendant-Hawthorne testified at trial that he knew nothing about the torch down process or hot groove application for 8100 square feet installation of the new roof. N.T. 181.

The Plaintiffs-Eagle Truck and Rodop Trucking presented substantial evidence in support of their causes of action for negligence, negligent hiring, negligent supervision and respondeat superior. William Hawthorne executed the contract in his own name. Robb H. was the owner and landlord of the buildings. Defendant-Hawthorne negligently selected the contractor and failed to select a competent contractor. These Defendants negligently employed an incompetent and careless contractor.

## C.    Damages

The testimony of Mr. Hakan Rodop was credible. The Court has reviewed and relied on the photographs and other exhibits when considering the devastation and damages to plaintiffs' property. Judgment will be awarded in the amount of **$115,520.00.**

The testimony of Mr. Filiberto Calzadillo and his wife, Mrs. Aida Rosales was credible. The Court has reviewed and relied on the photographs and other exhibits when considering the devastation and damages to plaintiffs' property. Judgment will be awarded in the amount of **$86,005.00.**

15

## III CONCLUSION

This Court concludes that the fire which occurred on November 2, 2008, was avoidable. It was the result of carelessness and negligence of Pawel Wojdalski and PW Custom Construction when those defendants installed a torch down rubber roof. The unskilled and untrained roofer improperly applied and/or used the roofing materials and the propane torch.

This Court also concludes that William Hawthorne and Robb H., Inc. in complete disregard of the duty owed to the Plaintiffs, failed to exercise reasonable care or investigation to employ a competent contractor. The type of work, known by those defendants to be specialty work and dangerous if not properly done, required William Hawthorne and Robb H., Inc. to go further than look at a website and pick the cheapest contractor without any effort to ascertain the contractor's actual competence for this major project.

For all of the reasons set forth above in these Findings of Fact and Conclusions of Law, judgment will be entered in favor of all Plaintiffs and against all Defendants.

BY THE COURT:

FREDERICA A. MASSIAH-JACKSON, J.

Dec. 19, 2013

16